**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

TANETHIA HOLDEN,
an individual,

                                        Case No.:

        Plaintiff,

v.

HOLIDAY INN CLUB
VACATIONS INCORPORATED,
f/k/a ORANGE LAKE COUNTRY CLUB, INC.,
a foreign for-profit corporation, and
EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation,

        Defendants.

_____/

## COMPLAINT

**COMES NOW**, Plaintiff, TANETHIA HOLDEN (hereinafter, "Ms. Holden" or

"Plaintiff"), by and through the undersigned counsel, and hereby sues Defendants, HOLIDAY

INN CLUB VACATIONS INCORPORATED, f/k/a ORANGE LAKE COUNTRY CLUB, INC.

(hereinafter, "HICV") and EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter,

"Experian") (hereinafter collectively, "Defendants").  In support thereof, Plaintiff states:

## PRELIMINARY STATEMENT

1.      This is an action for damages for violations of the Fair Credit Reporting Act, 15

United States Code, Section 1681 *et seq*. (hereinafter, the "FCRA") wherein HICV improperly

credit-reported and subsequently verified a consumer loan account allegedly owed to HICV on

Plaintiff's consumer credit report and in Plaintiff's consumer credit file as maintained by Experian.

More specifically,  HICV failed to perform its duties as required by a contractual agreement

entered into between Plaintiff and HICV, after Plaintiff advised HICV that she did not owe a

1

balance on the account, and after Plaintiff disputed HICV's reporting of such erroneous information directly to Experian.

2.      Further, this is an action for damages for HICV's violations of the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (hereinafter, the "FCCPA") wherein HICV communicated directly with Plaintiff in an attempt to collect the above-referenced consumer debt after HICV received notice and possessed actual knowledge of Plaintiff's legal counsel with respect to such debt and after HICV possessed said legal counsel's contact information.  Further, HICV also unlawfully communicated directly with Plaintiff in an attempt to collect such debt despite HICV knowing that Plaintiff did not owe the debt.

3.      Additionally, despite Plaintiff disputing the false and erroneous information furnished by HICV directly to Experian, Experian continued to incorrectly report such account with balances due and past-due.

## JURISDICTION, VENUE & PARTIES

4.      Jurisdiction of this Court arises under 28 United States Code, Section 1331 as well as pursuant to the FCRA, 15 United States Code Section 1681, *et seq*., and supplemental jurisdiction exists permitting Plaintiff's claims under the FCCPA pursuant to 28 United States Code, Section 1367.

5.      Defendants are subject to the jurisdiction of this Court as HICV and Experian each regularly transact business in this District.

6.      Venue is proper in this District as HICV's principal place business is located in this District and the acts and transactions described herein occur in this District.

7.      At all material times herein, Plaintiff is a natural person residing in Oakland County, Michigan.

8.　　At all material times herein, HIVC is a foreign for-profit corporation existing under the laws of the State of Delaware with its principal place of business located at 9271 S. John Young Parkway, Orlando, Florida 32819.

9.　　At all material times herein, Experian is a for-profit corporation existing under the laws of the state of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

<strong><u>FCRA STATUTORY STRUCTURE</u></strong>

10.　　Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  *See* 15 United States Code, Section 1681b.

11.　　Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates.  *Id.* at § e(b) (emphasis added).

12.　　Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge—and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute.  *Id.* at § i(a).

13.　　Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency

shall review and consider all relevant information submitted by the consumer.  *Id.* at § i(a)(4).

14.     Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation.  *Id.* at § i(a)(5).

15.     Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.  *Id.* at § s-2(b).

16.     Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees.  *Id.* at § n.

17.     Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount

equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees.  *Id.* at § o.

## FCCPA STATUTORY STRUCTURE

18.     The FCCPA is a state consumer protection statute, modeled after the Fair Debt Collection Practices Act, 15 United States Code, Section 1692 (hereinafter, "FDCPA"), a statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy.  15 U.S.C., §§ 1692(a) and (e); Fla. Stat. §§ 559.55 and 559.77(5).

19.     The FCCPA and FDCPA impose civil liability on any creditor/person as well as any debt collector, and both statutes prohibit engaging in particular violative conduct in connection with collecting consumer debts.  15 U.S.C. § 1692(a)(6); Fla. Stat. § 559.55(5).

20.     Specifically, the FCCPA and FDCPA prohibit unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information regarding a debt *directly or indirectly* to any person *through any medium*."  15 U.S.C. § 1692(a)(2); Fla. Stat. § 559.55(2) (emphasis added).

21.     For example, the FCCPA prohibits a person from collecting consumer debt by communicating with the consumer in a manner that can be expected to harass or abuse the consumer debtor and also prohibits a person from communicating with a consumer debtor in an attempt to collect a debt if the consumer is known to be represented by legal counsel with respect to such debt. *See* Fla. Stat. § 559.72(7) and (18).

22.     Additionally, the FCCPA prohibits a person from attempting to collect a debt that is known to be illegitimate or by asserting a legal right that does not exist.  *See* Fla. Stat. § 559.72(9).

## GENERAL ALLEGATIONS

23.     At all material times herein, Plaintiff is a "consumer" as defined by 15 United States Code, Section 1681a(c) and Florida Statutes, Section 559.55(8) because she is an individual and allegedly obligated to pay a debt.

24.     At all material times herein, HICV, itself and through its subsidiaries, regularly services the credit of consumers and credit-reports information associated with the same in Orange County, Florida.

25.     At all material times herein, HVIC is also a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

26.     At all material times herein, HIVC report information concerning a consumer debt—and attempt to collect such alleged debt directly from Plaintiff—including but not limited to, an alleged balance due from Plaintiff on a consumer loan related to a personal timeshare interest, referenced by account number ending -6250 and/or -9457 (hereinafter, the "Debt").

27.     At all material times herein, Plaintiff rescinded her consent to finalize a sales transaction entered into between Plaintiff and HICV prior to HICV closing the transaction.

28.     At all material times herein, after Plaintiff rescinded her consent as referenced above and further detailed below, Plaintiff did not owe a balance to HICV per the explicit terms of the subject agreement, drafted by HICV.

29.     Notwithstanding, HICV repeatedly communicated with Plaintiff—both directly and indirectly—in an attempt to collect an illegitimate balance from Plaintiff and also inaccurately reported the tradeline account associated with the Debt with a balance due and past-due on Plaintiff's Experian credit reports and in Plaintiff's Experian credit file.

30.     At all material times herein, Experian is a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  Experian disburses such consumer reports to third parties under contract for monetary compensation.

31.     At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

32.     All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

## CREATION AND TERMINATION OF THE DEBT

33.     On or about June 25, 2016, Plaintiff entered into an agreement with HICV acquiring a personal property timeshare membership for a total purchase price of $17,571.80 (hereinafter, the "Agreement").  Please see attached a true and correct copy of the contractual agreement including the corresponding Promissory Note and terms and conditions labeled as Composite Exhibit "A."

34.     Pursuant to the Agreement, the transaction is not deemed closed until the deed is recorded in Plaintiff's name.  *See* Ex. A at p. 13, ¶ 7(a).

35.     Additionally, the transaction is not deemed closed until Plaintiff makes the first three (3) timely payments under the Agreement, at which time the deed will be recorded.  *Id*. at ¶ 7(b).

36.     Plaintiff's first payment under the Agreement was due by December 22, 2016.  *Id*.

at p. 5.

37.     The Agreement also states that time is of the essence with respect to HICV's performance, and upon HICV's default of any term of the Agreement, Plaintiff may elect to rescind and terminate the Agreement. *Id*. at ¶ 15.

38.     Additionally, the Agreement includes a clause stating that upon Plaintiff's default of any term of the Agreement, HICV shall retain all monies paid by Plaintiff until the date of default as liquidated damages. *Id*. at p. 14, ¶ 13.

39.     Between December 2016 and March 2017, Plaintiff made the first three (3) payments to HICV as required by the Agreement.

40.     On or about March 9, 2017, Plaintiff retained Finn Law Group, P.A. (hereinafter, "FLG") as her legal counsel with respect to the Debt.

41.     As of March 9, 2017, despite Plaintiff making her first three (3) payments to HICV as required by the Agreement, HICV had not recorded the deed in Plaintiff's name.

42.     Therefore, pursuant to the Agreement, the sale transaction was not closed as of March 9, 2017. *See* Ex. A at p. 13, ¶ 7.

43.     In other words, even though Plaintiff made her first three (3) payments as required by the Agreement, HICV still did not timely record the deed in Plaintiff's name; therefore, HICV breached the clause stating that time is of the essence with respect to HICV's performance under the Agreement.

44.     On or about March 9, 2017, Plaintiff provided notice to HICV, via her legal counsel, advising that she retained FLG with respect to the Debt, providing FLG's contact information, advising HICV to cease all direct communication with Plaintiff regarding the Debt, and instead direct any communications regarding the Debt to FLG's office (hereinafter, "First

Notice of Representation and Rescission").  Please see attached a true and correct copy of said Notice of Representation and Rescission sent via facsimile transmission (i.e., fax) labeled as Exhibit "B."

45.     On or about March 9, 2017, HICV received the First Notice of Representation and Rescission.

46.     Additionally, the First Notice of Representation and Rescission disputed the validity of the sales transaction creating the Debt as a result of fraudulent representations made by HICV's employees and/or representatives at the time of the sale, advised that Plaintiff considered the transaction null and void, and advised that Plaintiff no longer intended to make any payments to HICV on the Debt.  *See* Ex. B.

47.     As such, as of March 9, 2017, Plaintiff had not performed her duties under the Agreement to warrant the sales transaction as closed, HICV had not performed its duties under the Agreement to warrant the sales transaction as closed, and Plaintiff provided HICV explicit notice that she no longer desired to close and/or finalize the sales transaction.

48.     To the extent that Plaintiff owed any balance to HICV as of March 9, 2017, Plaintiff rescinded the Agreement, and allowed HICV to retain any monies previously paid as liquidated damages pursuant to the Agreement.  *See* Ex. A at p. 14, ¶ 13.

49.     On or about March 23, 2017, Plaintiff sent *another* notice, via her legal counsel, *again* advising HICV that Plaintiff considered the Agreement null and void and requested that HICV provide written confirmation affirming the cancellation of the Agreement (hereinafter, "Second Notice of Representation and Rescission").  Please see attached a true and correct copy of said Second Notice of Representation and Rescission labeled as Exhibit "C."

50.     Moreover, the Second Notice of Representation and Rescission explicitly advised

9

"if [HICV] has reported this account to the credit bureaus, we demand a full trade line deletion be completed." *See* Ex. C at p. 3.

51.     Despite Plaintiff providing HICV with actual knowledge of FLG's legal representation of Plaintiff with respect to the Debt and despite Plaintiff providing HICV with actual knowledge of FLG's contact information via the First Notice of Representation and Rescission and the Second Notice of Representation and Rescission, HICV continued to communicated directly with Plaintiff in an attempt to collect the Debt.

52.     Additionally, despite HICV knowing that it failed to timely record the deed in Plaintiff's name—a necessary step to close and/or finalize the sales transaction per the explicit terms of the agreement drafted by HICV—and despite HICV knowing Plaintiff rescinding her consent to close the transaction prior to HICV recording the deed, HICV continued to communicate with Plaintiff in an attempt to collect a balance on the Debt, and also reported a balance due on the Debt by Plaintiff to Experian.

53.     On or about June 19, 2017, after Plaintiff repeatedly advised that she no longer intended to make any payments pursuant to the Agreement and that the Agreement was null and void as a result of HICV's failure to timely record the deed, HICV improperly recorded the deed in Plaintiff's name.  Please see attached a true and correct copy of said deed labeled as Exhibit "D."

**HICV'S INDIRECT DEBT COLLECTION COMMUNICATIONS TO PLAINTIFF**

54.     Beginning on March 14, 2017 and as of the date of this Complaint, HICV sent *at least* fifty (50) billing statements and *at least* three (3) collection letters regarding Plaintiff and the Debt to FLG's office.  Please see attached true and correct copies of said billing statements and collection letters labeled as Composite Exhibit "E."

55.     HICV's immediately-aforementioned billing statements and collection letters demanded payment on the Debt and constitute indirect communications made in an attempt to collect the illegitimate Debt from Plaintiff.  *See generally* Ex. E.

56.     Additionally, by sending the above-referenced billing statements and collection letters directly to FLG's office, HICV clearly knew of FLG's legal representation of Plaintiff with respect to the Debt and clearly possessed FLG's contact information.

### HICV'S DIRECT DEBT COLLECTION COMMUNICATIONS TO PLAINTIFF

57.     On or about December 2, 2017, despite HICV possessing actual knowledge of FLG's legal representation of Plaintiff with respect to the Debt and despite HICV possessing FLG's contact information, HICV sent a billing statement directly to Plaintiff in an attempt to collect the Debt.  Please see attached a true and correct copy of said billing statement labeled as Exhibit "F."

58.     On or about December 21, 2017, despite HICV possessing actual knowledge of FLG's legal representation of Plaintiff with respect to the Debt and despite HICV possessing FLG's contact information, HICV sent *another* billing statement directly to Plaintiff in an attempt to collect the Debt.  Please see attached a true and correct copy of said billing statement labeled as Exhibit "G."

### PLAINTIFF'S FIRST DISPUTE TO EXPERIAN AND HICV

59.     On or about June 15, 2018, FLG sent a letter directly to Experian and HICV on Plaintiff's behalf, disputing Experian's and HICV's objectively-inaccurate reporting of the tradeline account associated with the Debt (hereinafter, "First Dispute").  Please see attached a true and correct copy of said First Dispute and corresponding certified mail delivery confirmation sheets labeled as Composite Exhibit "H."

60.    On or about June 18, 2018, HICV received Plaintiff's First Dispute.  *See* Ex. H at p. 9.

61.    On or about June 23, 2018, Experian received Plaintiff's First Dispute.  *See* Ex. H at p. 8.

62.    Additionally, after Experian received Plaintiff's First Dispute, Experian communicated Plaintiff's First Dispute to HICV.

63.    Plaintiff's First Dispute provided sufficient information to allow Defendants to identify the account in question (i.e., the Debt), to identify that HICV failed to timely record the deed in Plaintiff's name and thereby failed to close the transaction before Plaintiff rescinded her consent to enter into the Agreement, and to update the account to reflect a zero-dollar ($0.00) balance due or past-due at minimum.  *See generally* Ex. H.

64.    On or about July 17, 2018, HICV verified its reporting of the tradeline account associated with the Debt to Experian, and Experian subsequently continued to report the Debt with a balance due and past-due.

65.    Plaintiff, however, never received a letter or other written communication from Experian including Experian's re-investigation results in response to Plaintiff's First Dispute.

66.    On or about September 6, 2018, Plaintiff obtained a copy of her consumer disclosure report as maintained by Experian.  Please see attached true and correct copies of relevant pages from said consumer disclosure report labeled as Exhibit "I."

67.    Despite Plaintiff rescinding her consent to enter into/finalize the Agreement prior to HICV recording the deed in Plaintiff's name and closing the transaction after Plaintiff's default, despite Plaintiff repeatedly notifying HICV that Plaintiff considered the Agreement null and void as a result of HICV's failure to timely record the deed, and despite Plaintiff's First Dispute, HICV

12

and Experian continued to report the Debt with a $21,683.00 balance due and $4,429.00 balance past-due as of August 2018, and reported the Debt as past-due between June 2017 and August 2018.  *See* Ex. I.

## PLAINTIFF'S SECOND DISPUTE TO EXPERIAN

68.    On or about September 7, 2018, FLG sent *another* letter directly to Experian, on Plaintiff's behalf, *again* disputing Experian's and HICV's reporting of the tradeline account associated with the Debt (hereinafter, "Second Dispute").  Please see attached a true and correct copy of Plaintiff's Second Dispute labeled as Exhibit "J."

69.    Experian received Plaintiff's Second Dispute.

70.    Experian communicated Plaintiff's Second Dispute to HICV.

71.    On or about October 1, 2018, Experian sent a letter directly to Plaintiff including Experian's re-investigation results in response to Plaintiff's Second Dispute.  Please see attached a true and correct copy of said letter labeled as Exhibit "K."

72.    Despite Plaintiff rescinding her consent to enter into/finalize the Agreement prior to HICV recording the deed in Plaintiff's name and closing the transaction after Plaintiff's default, and despite Plaintiff repeatedly notifying HICV that Plaintiff considered the Agreement null and void as a result of HICV's failure to timely record the deed—and despite Plaintiff's First Dispute and Second Dispute notifying Experian and HICV of the same—Experian and HICV *still* reported the Debt with a $21,927.00 balance due and $4,724.00 balance past-due as of September 2018, and reported the Debt as past-due between June 2017 and September 2018.  *See* Ex. K.

## PLAINTIFF'S THIRD DISPUTE TO EXPERIAN

73.    On or about November 9, 2018, FLG sent *another* letter directly to Experian, on Plaintiff's behalf, *again* disputing Experian's and HICV's reporting of the tradeline account

associated with the Debt (hereinafter, "Third Dispute").  Please see attached a true and correct copy of Plaintiff's Third Dispute labeled as Exhibit "L."

74.     Experian received Plaintiff's Third Dispute.

75.     Experian communicated Plaintiff's Third Dispute to HICV.

76.     Plaintiff's Third Dispute similarly advised that Plaintiff rescinded her consent to enter into/finalize the Agreement prior to HICV recording the deed in Plaintiff's name and closing the transaction after Plaintiff's default, that the Agreement was null and void as a result of HICV's failure to timely record the deed, and the tradeline account associated with the Debt should therefore be deleted.

77.     As of the date of this Complaint, Plaintiff has not received any correspondence from Experian in response to her Third Dispute.

## CREDIT DENIALS

78.     In or around February 2019, Plaintiff sought a mortgage loan through United Wholesale Mortgage.

79.     In or around February 2019, United Wholesale Mortgage advised Plaintiff that she did not qualify for a mortgage loan and United Wholesale Mortgage refused to offer Plaintiff credit as a result of Defendants' negative and derogatory reporting of the Debt on Plaintiff's Experian credit reports and in her Experian credit file.

80.     Plaintiff believes she will be unable to obtain a mortgage loan as long as the Debt is reported inaccurately on her Experian credit reports and in her Experian credit file.

81.     Plaintiff retained Swift, Isringhaus & Dubbeld, P.A. as well as Finn Law Group, P.A. for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay her attorneys a reasonable fee for their services.

82.     The FCRA, Sections 1681n or 1681o, or both, provide for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendants.

83.     As a result of Defendants' conduct, actions, and inactions, Plaintiff was denied credit, incurred less favorable terms on consumer loans and other consumer transactions, was deterred from making additional credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and erroneous reporting of the Debt and did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that inaccurately reported the Debt with significant balances due and past-due.

84.     Additionally, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, loss of sleep, and confusion, believing that despite not owing a balance on the Debt and repeatedly advising Defendants of the same, Plaintiff must simply endure Defendants' erroneous and inaccurate reporting of the Debt.

85.     Plaintiff also dealt with the stress and anxiety of feeling hopeless and was deterred from further credit applications, believing that she would be denied credit as a result of the erroneous and incorrect reporting of the Debt and that Plaintiff would instead pay higher interest rates in the event she could obtain financing.  In fact, Plaintiff suffered additional actual damages in the form of damage to her credit reputation, higher credit costs, and other additional costs and fees.

**COUNT ONE:**
**UNLAWFUL DEBT COLLECTION PRACTICES –**
**VIOLATION OF FLORIDA STATUTES SECTION 559.72(7)**

Plaintiff re-alleges paragraphs one (1) through eighty-five (85) as if fully restated herein

and further states as follows:

86.    HICV is subject to, and violated the provisions of, Florida Statutes, Chapter 559.72(7) by communicating with Plaintiff in an attempt to collect the Debt in a manner that can reasonably be expected to abuse or harass Plaintiff.

87.    Specifically, Plaintiff repeatedly provided notice to HICV that HICV made fraudulent misrepresentations inducing Plaintiff into the Agreement, that Plaintiff would no longer make any payments under the Agreement, that HICV failed to timely record the deed in Plaintiff's name as required by the Agreement and therefore the Agreement was null and void, and that HICV was only entitled to retain any monies previously paid by Plaintiff to HICV as liquidated damages stipulated in the Agreement (drafted by HICV).  As such, HICV knew that Plaintiff no longer owed a balance on the Debt.

88.    Additionally, Plaintiff repeatedly provided HICV with notice and actual knowledge of FLG's legal representation of Plaintiff with respect to the Debt and repeatedly provided HICV with FLG's contact information.

89.    Despite HICV clearly possessing knowledge of FLG's legal representation of Plaintiff with respect to the Debt—given HICV sent over fifty (50) communications addressed to FLG's office regarding Plaintiff and the Debt beginning on March 14, 2017—HICV sent *at least* two (2) billing statements directly to Plaintiff in an attempt to collect the Debt in December 2017.

90.    Moreover, all of HICV's above-referenced Debt collection communications—including those addressed to FLG—demanded payment from Plaintiff on the Debt despite HICV knowing that the Agreement was null and void and that Plaintiff did not owe the Debt per the explicit terms of the Agreement as drafted by HICV.

91.    Overall, HICV's conduct served no purpose other than to annoy, abuse, and harass

Plaintiff into making payment on the Debt, leading Plaintiff to believe that despite retaining legal counsel, repeatedly advising HICV of the same, and terminating the Agreement as allowed by its terms, HICV could and would continue to demand payment from Plaintiff on the Debt and would continue to send Debt collection communications directly to Plaintiff—circumventing FLG's legal representation of Plaintiff with respect to the Debt—unless and until Plaintiff made payment to HICV on the Debt.

92.     As a direct and proximate result of HICV's conduct and actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT TWO:**
**UNLAWFUL DEBT COLLECTION PRACTICES –**
**VIOLATION OF FLORIDA STATUTES SECTION 559.72(9)**

Plaintiff re-alleges paragraphs one (1) through eighty-five (85) as if fully restated herein and further states as follows:

93.     HICV is subject to, and violated the provisions of, Florida Statutes, Chapter 559.72(9) by communicating with Plaintiff in an attempt to collect a consumer debt that is HICV knows is illegitimate and by asserting a legal right that HICV knows does not exist.

94.     Specifically, pursuant to the Agreement, the transaction is not deemed closed until Plaintiff makes the first three (3) timely payments under the Agreement and the deed is recorded in Plaintiff's name.

95.     The Agreement also states that time is of the essence with respect to HICV's performance, and upon HICV's default of any term of the Agreement, Plaintiff may elect to rescind and terminate the Agreement.

96.     Additionally, the Agreement includes a clause stating that upon Plaintiff's default of any term of the Agreement, HICV shall retain all monies paid by Plaintiff until the date of

default as liquidated damages.

97.     As of March 9, 2017, the transaction had not been finalized despite Plaintiff making her first three (3) payments to HICV as required by the Agreement because HICV had not recorded the deed in Plaintiff's name.

98.     On March 9, 2017 and again on March 27, 2017, Plaintiff advised HICV, via her legal counsel, that she disputed the validity of the sales transaction creating the Debt as a result of fraudulent representations made by HICV's employees and/or representatives at the time of the sale, advised that Plaintiff considered the Agreement null and void, advised that Plaintiff no longer intended to make any payments to HICV on the Debt, and advised that HICV failed to timely perform its duties under the Agreement in breach of the Agreement.

99.     As such, as of March 2017, HICV knew that Plaintiff did not owe any further balance to HICV on the Debt, and HICV knew that it had not recorded the deed in Plaintiff's name. In fact, HICV did not attempt to record the deed in Plaintiff's name until June 19, 2017.

100.     Between March 2017 and the date of this Complaint, despite HICV knowing that the Agreement was null and void and that Plaintiff did not owe a balance on the Debt per explicit terms of the Agreement as drafted by HICV, HICV sent over fifty (50) written communications to Plaintiff or Plaintiff's legal counsel demanding payment on the illegitimate Debt.

101.     HICV's above-referenced Debt collection communications sent to Plaintiff's legal counsel constitute an indirect attempt to collect the illegitimate Debt from Plaintiff.

102.     As such, HICV communicated with Plaintiff in an attempt to collect the Debt despite HICV knowing that the Agreement was null and void and therefore knowing Plaintiff did not owe a balance on the Debt.

103.     As a direct and proximate result of HICV's conduct and actions, Plaintiff sustained

damages as defined by Florida Statutes, Section 559.77.

## COUNT THREE:
## UNLAWFUL DEBT COLLECTION PRACTICES –
## VIOLATION OF FLORIDA STATUTES SECTION 559.72(18)

Plaintiff re-alleges paragraphs one (1) through eighty-five (85) as if fully restated herein and further states as follows:

104.    HICV is subject to, and violated the provisions of, Florida Statutes, Chapter 559.72(18) by communicating directly with Plaintiff in an attempt to collect the Debt despite HICV receiving notice and possessing actual knowledge of FLG's legal representation of Plaintiff with respect to the Debt and despite HICV possessing FLG's contact information.

105.    Specifically, HICV received notice and possessed actual knowledge of FLG's legal representation of Plaintiff with respect to the Debt via the First Notice of Rescission and Representation and the Second Notice of Rescission and Representation.

106.    Moreover, HICV clearly possessed actual knowledge of FLG's legal representation of Plaintiff with respect to the Debt and FLG's contact information as HICV sent over fifty (50) communications addressed to FLG's office regarding Plaintiff and the Debt beginning in March 2017.

107.    Despite HICV possessing the above-referenced knowledge, HICV sent *at least* two (2) billing statements directly to Plaintiff in an attempt to collect the Debt.

108.    As such, HICV communicated directly with Plaintiff in an attempt to collect the Debt despite knowing Plaintiff retained legal counsel with respect to the Debt and despite HICV possessing such legal counsel's contact information.

109.    As a direct and proximate result of HICV's conduct and actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT FOUR:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)**

Plaintiff re-alleges paragraphs one (1) through eighty-five (85) as if fully restated herein and further states as follows:

110.   HICV is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly re-investigate Plaintiff's disputes, failing to review all relevant information regarding the same, and failing to correctly report the Debt on Plaintiff's credit reports after re-investigating Plaintiff's disputes.

111.   As described above, despite receiving notice of Plaintiff's disputes, HICV willfully and/or negligently reported erroneous and inaccurate credit information regarding the Debt to Experian.

112.   Specifically, after receiving notice of Plaintiff's disputes from both Plaintiff and Experian, HICV inaccurately reported the Debt with a balance due in excess of $27,000.00 and a balance past-due in excess of $4,500.00 beginning as of June 2017, which ultimately reflected negatively and adversely on Plaintiff's Experian credit reports and credit files.

113.   HICV's refusal to update the account associated with the Debt to reflect a zero-dollar ($0.00) balance due as of the date of this Complaint—was intentionally, willfully, and knowingly done.

114.   HICV's re-investigations were not conducted in good faith.

115.   HICV's re-investigations were not conducted reasonably.

116.   HICV's re-investigations were not conducted using all information reasonably available to HICV.

20

117.    As a result of HICV's conduct, actions, and inactions, Plaintiff was denied credit, incurred less favorable terms on consumer loans and other consumer transactions, and was deterred from making additional credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and erroneous reporting of the Debt and did not wish to further damage her credit score with futile credit inquires.

118.    HICV's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

119.    HICV's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT FIVE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)**

Plaintiff re-alleges paragraphs one (1) through eighty-five (85) as if fully restated herein and further states as follows:

120.    Experian is subject to, and violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

121.    Experian willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding the Debt.

122.    Specifically, despite HICV retaining all monies previously paid by Plaintiff as

liquidated damages under the Agreement, despite Plaintiff rescinding her consent to enter into/finalize the Agreement prior to HICV recording the deed in Plaintiff's name and improperly closing the transaction after Plaintiff's default, despite Plaintiff repeatedly notifying HICV the Agreement is null and void as a result of HICV's failure to timely record the deed, and despite Plaintiff's repeated disputes to Experian and HICV regarding the same, Experian continued to report the Debt with an outstanding balance due of in excess of $27,000.00 as well as a balance past-due in excess of $4,500.00, and reported the Debt as significantly past-due beginning as of June 2017.

123.    Further, Experian willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when re-investigating Plaintiff's disputes of the above-referenced inaccuracies contained in her Experian credit reports and credit file.

124.    For example, despite Plaintiff's repeated disputes of the inaccuracies in her credit reports, Experian did not request any documents from HICV supporting HICV's reporting of the Debt.

125.    Such reporting of the Debt is false and evidences Experian's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

126.    Importantly, Experian possessed actual knowledge that Plaintiff did not owe a balance on the Debt from *no less than* three (3) disputes sent directly to Experian, which explained the rescission of the Agreement in detail, enabling Experian to easily identify that Plaintiff could not and did not owe any balance to HICV on the Debt.

127.    As a result of Experian's conduct, actions, and inactions, Plaintiff was denied

credit, incurred less favorable terms on consumer loans and other consumer transactions, and was deterred from making additional credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and erroneous reporting of the Debt and did not wish to further damage her credit score with futile credit inquires.

128.   Experian's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

129.   Experian's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT SIX:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i(a)(1)**

Plaintiff re-alleges paragraphs one (1) through eighty-five (85) as if fully restated herein and further states as follows:

130.   Experian is subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(1), by failing to conduct reasonable re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files.

131.   Specifically, Experian willfully and/or negligently refused to properly re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

132.   For example, as of the date of this Complaint, Plaintiff has not received any correspondence from Experian in response to her Third Dispute, indicating that Experian did not conduct any re-investigation in response to Plaintiff's Third Dispute.

133.    Additionally, rather than conduct its own, independent re-investigation, Experian solely relied on HICV's blanket and parroted assertions that Plaintiff owed a balance to HICV on the Debt, including significantly past-due amounts.

134.    Experian did not request any documents from HICV corroborating information furnished and verified by HICV to Experian regarding Plaintiff and the Debt in response to any of Plaintiff's disputes.

135.    Overall, Experian continues to inaccurately report the Debt with a balance due and past-due as of the date of this Complaint.

136.    As such, Experian's re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Debt was inaccurate and Experian failed to subsequently update the inaccurate information in Plaintiff's credit reports and credit files.

137.    Such reporting is false and evidences Experian's failure to conduct reasonable re-investigations of Plaintiff's repeated disputes.

138.    Experian's reinvestigations of Plaintiff's disputes were not conducted reasonably.

139.    Experian's reinvestigations merely copied and relied upon the inaccurate Debt information conveyed by HICV.

140.    Experian's reinvestigations of Plaintiff's disputes were not conducted in good faith.

141.    Experian's reinvestigation procedures are unreasonable.

142.    Experian's re-investigations of Plaintiff's disputes were not conducted using all information reasonably available to Experian.

143.    Experian's reinvestigations were *per se* deficient by reason of these failures in Experian's reinvestigations of Plaintiff's disputes and the Debt.

144.    As a result of Experian's conduct, actions, and inactions, Plaintiff was denied

credit, incurred less favorable terms on consumer loans and other consumer transactions, and was deterred from making additional credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and erroneous reporting of the Debt and did not wish to further damage her credit score with futile credit inquires.

145.    Experian's actions in violation of 15 United States Code, Section 1681i(a)(1), constitute negligent or willful noncompliance—or both—with the FCRA, and entitles Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT SEVEN:**
**FAIR CREDIT REPORTING ACT –**
**<u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i(a)(4)</u>**

Plaintiff re-alleges paragraph one (1) through eighty-five (85) as if fully restated herein and further states as follows:

146.    Experian is subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(4), by failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments.

147.    Specifically, despite receiving Plaintiff's First Dispute, Second Dispute, and Third Dispute, each of which explained in detail the rescission and cancellation of the Agreement as a result of HICV's failure to timely record the deed and Plaintiff's justified rescission of the Agreement, allowing Experian to determine that Plaintiff could not and did not owe a balance on the Debt, Experian *continued* to report the Debt with a balance due and as significantly past-due beginning in June 2017.

148.    Experian's failure to review and consider all information received in Plaintiff's disputes was done in bad faith.

149.    As a result of Experian's conduct, actions, and inactions, Plaintiff was denied credit, incurred less favorable terms on consumer loans and other consumer transactions, and was deterred from making additional credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and erroneous reporting of the Debt and did not wish to further damage her credit score with futile credit inquires.

150.    Experian's actions in violation of 15 United States Code, Section 1681i(a)(4), constitute negligent or willful noncompliance—or both—with the FCRA, and entitles Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 USC, Sections 1681n or 1681o, or both.

### COUNT EIGHT:
### FAIR CREDIT REPORTING ACT –
### VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i(a)(5)

Plaintiff re-alleges paragraphs one (1) through eighty-five (85) as if fully restated herein and further states as follows:

151.    Experian is subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(5), by failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified.

152.    Specifically, despite receiving Plaintiff's First Dispute, Second Dispute, and Third Dispute, each of which explained in detail the rescission and cancellation of the Agreement as a result of HICV's failure to timely record the deed and Plaintiff's justified termination of the Agreement, allowing Experian to determine that Plaintiff could not and did not owe a balance on the Debt and its reporting of the Debt was inaccurate, Experian *continued* to report the Debt with a balance due and as significantly past-due beginning in June 2017.

153.    Despite Plaintiff's repeated disputes of the inaccuracies in her credit reports,

Experian did not request any documents from HICV supporting HICV's reporting of the Debt and therefore could not possibly independently verify HICV's reporting of the Debt.

154. As a result of Experian's conduct, actions, and inactions, Plaintiff was denied credit, incurred less favorable terms on consumer loans and other consumer transactions, and was deterred from making additional credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and erroneous reporting of the Debt and did not wish to further damage her credit score with futile credit inquires.

155. Experian's actions were a direct and proximate cause of, as well as a substantial factor in, Plaintiff's serious injuries, damages, and harm as more fully stated herein.

156. Experian's actions in violation of 15 United States Code, Section 1681i(a)(5), constitute negligent or willful noncompliance—or both—with the FCRA, and entitles Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 USC, Sections 1681n or 1681o, or both.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a. Judgment against HICV for maximum statutory damages for violations of the FCCPA;

b. Judgment declaring that HICV violated the FCCPA;

c. Judgment against HICV and Experian for maximum statutory damages for violations of the FCRA;

d. Judgment enjoining Defendants from engaging in further conduct in violation of the FCCPA and FCRA;

27

e.       Actual damages in an amount to be determined at trial;

f.       Compensatory damages in an amount to be determined at trial;

g.      Punitive damages in an amount to be determined at trial;

h.      An award of attorney's fees and costs; and

i.       Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT, ISRINGHAUS & DUBBELD P.A.**

/s/ *Aaron M. Swift*
**Aaron M. Swift, Esq., FBN 0093088**
**Jordan T. Isringhaus, Esq., FBN 0091487**
**Jon P. Dubbeld, Esq., FBN 105869**
**Sean E. McEleney, Esq., FBN 125561**
10460 Roosevelt Blvd. North
Suite 313
St. Petersburg, FL 33703
Phone: (813) 563-8466
Fax: (727) 255-5332
aswift@swift-law.com
jisringhaus@swift-law.com
jdubbeld@swift-law.com
smceleney@swift-law.com

*~and~*

**FINN LAW GROUP, P.A.**
**Michael D. Finn, Esq., FBN 89029**
**J. Andrew Meyer, Esq., FBN 56766**
7431 114th Avenue, Suite 104

Largo, FL 33773
Phone: (855) 346-6529
Fax: (727) 475-1494
michaeldfinn@finnlawgroup.com
ameyer@finnlawgroup.com
*Counsel for Plaintiff*